IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| KATHERINE A. MERRITT,<br><br>    Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration,<br><br>    Defendant. | CV 17-130-BLG-TJC<br><br>**ORDER** |

On October 2, 2017, Plaintiff Katherine A. Merritt ("Plaintiff") filed a

Complaint pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting

judicial review of the final administrative decision of the Commissioner of Social

Security ("Commissioner" or "Defendant") regarding the denial of her claim for

disability insurance benefits and supplemental security income under Titles II and

XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.  (Doc. 2.)  On

December 4, 2017, Defendant filed the Administrative Record ("A.R.").  (Doc. 6.)

Presently before the Court is Plaintiff's motion for summary judgment,

seeking reversal of Defendant's denial and remand for an award of disability

benefits, or alternatively for further administrative proceedings.  (Doc. 11.)  The

motion is fully briefed and ripe for the Court's review.  (Docs. 12, 14.)

For the reasons set forth herein, and after careful consideration of the record and the applicable law, the Court finds the ALJ's decision should be **AFFIRMED**.

## I.     PROCEDURAL BACKGROUND

Plaintiff filed applications for disability insurance benefits and supplemental security income on May 19, 2014.  (A.R. 193-195.)  Plaintiff alleged she has been unable to work since May 3, 2013 due to her disabling conditions.  (A.R. 193, 195.)  The Social Security Administration denied Plaintiff's applications initially on November 12, 2014, and upon reconsideration on April 2, 2015.  (A.R. 85-128.)

On April 20, 2015, Plaintiff filed a written request for a hearing.  (A.R. 142-143.)  Administrative Law Judge Tanya Dvarishkis (the "ALJ") held a hearing on March 3, 2016.  (A.R. 40-83.)  At the hearing, Plaintiff amended her alleged onset date to April 22, 2015.  (A.R. 82.)  On March 24, 2016, the ALJ issued a written decision finding Plaintiff not disabled.  (A.R. 19-34.)

Plaintiff requested review of the decision, and on August 2, 2017, the Appeals Council denied Plaintiff's request for review.  (A.R. 1-6.)  Thereafter, Plaintiff filed the instant action.

## II.     LEGAL STANDARDS

### A.     Scope of Review

The Social Security Act allows unsuccessful claimants to seek judicial review of the Commissioner's final agency decision.  42 U.S.C. §§ 405(g),

1383(c)(3).  The scope of judicial review is limited.  The Court must affirm the

Commissioner's decision unless it "is not supported by substantial evidence or it is

based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).  *See*

*also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("We may

reverse the ALJ's decision to deny benefits only if it is based upon legal error or is

not supported by substantial evidence."); *Flaten v. Sec'y of Health & Human*

*Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

"Substantial evidence is more than a mere scintilla but less than a

preponderance." *Tidwell*, 161 F.3d at 601 (citing *Jamerson v. Chater*, 112 F.3d

1064, 1066 (9th Cir. 1997)).  "Substantial evidence is relevant evidence which,

considering the record as a whole, a reasonable person might accept as adequate to

support a conclusion." *Flaten*, 44 F.3d at 1457.  In considering the record as a

whole, the Court must weigh both the evidence that supports and detracts from the

ALJ's conclusions. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Day v.*

*Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975)).  The Court must uphold the

denial of benefits if the evidence is susceptible to more than one rational

interpretation, one of which supports the ALJ's decision. *Burch v. Barnhart*, 400

F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one

rational interpretation, it is the ALJ's conclusion that must be upheld."); *Flaten*, 44

F.3d at 1457 ("If the evidence can reasonably support either affirming or reversing

the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary."). However, even if the Court finds that substantial evidence supports the ALJ's conclusions, the Court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a conclusion. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).

**B.     Determination of Disability**

To qualify for disability benefits under the Social Security Act, a claimant must show two things: (1) she suffers from a medically determinable physical or mental impairment that can be expected to last for a continuous period of twelve months or more, or would result in death; and (2) the impairment renders the claimant incapable of performing the work she previously performed, or any other substantial gainful employment which exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A). A claimant must meet both requirements to be classified as disabled. *Id.*

The Commissioner makes the assessment of disability through a five-step sequential evaluation process. If an applicant is found to be "disabled" or "not disabled" at any step, there is no need to proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005) (quoting *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000)). The five steps are:

1. Is claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

5. Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

Although the ALJ must assist the claimant in developing a record, the claimant bears the burden of proof during the first four steps, while the Commissioner bears the burden of proof at the fifth step. *Tackett v. Apfel*, 180 F.3d 1094, 1098, n.3 (citing 20 C.F.R. § 404.1512(d)). At step five, the Commissioner must "show that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id*. at 1100 (quoting 20 C.F.R. § 404.1560(b)(3)).

## III. FACTUAL BACKGROUND

### A. The Hearing

A hearing was held before the ALJ in Billings, Montana on March 3, 2016. (A.R. 40-83.)  Plaintiff testified she was currently unable to work because of anxiety attacks and inability to concentrate.  (A.R. 52-53.)  Plaintiff explained she worked for approximately four weeks for Tax Services of America earlier in 2016.  (A.R. 51-52.)  She stated she had six anxiety attacks during that time.  (A.R. 52.)  She also said she was making mistakes on tax returns because she couldn't concentrate.  (A.R. 53, 62-63.)  Plaintiff indicated she had also worked in concessions at the Metra Park Arena in Billings, and experienced anxiety at that job due to being around large crowds.  (A.R. 58.)

As to her physical limitations, Plaintiff testified that her pain is primarily related to her hips.  (A.R. 55.)  She said she gets steroid injections, which help with the pain for "a couple weeks."  (A.R. 55.)  She explained she has to wait at least three months between injections, and their effectiveness begins to wear off before she can get the next one.  (A.R. 68-69.)  When the injections wear off, she testified she can only walk for 3-4 minutes before she needs to sit.  (A.R. 55-56.)  She said standing also causes her pain, and she estimated she can sit for a maximum of approximately 30 minutes.  (A.R. 56.)

Regarding her activities, Plaintiff stated that her children do most of the household chores, and her husband does all the yard work. (A.R. 54.) She said she does cook, but her children "are helping out with that more and more." (A.R. 54.) She can take care of her personal hygiene and can shower on her own. (A.R. 54.) She is able to do her own laundry and does grocery shopping for the family. (A.R. 54.) Plaintiff can also drive, and she does so at least 5 times per week. (A.R. 54.) (A.R. 50, 54.) Plaintiff testified that she does not have difficulty understanding instructions, reading or understanding a newspaper article, or getting along with others. (A.R. 50, 57.)

Plaintiff stated that on a typical day she gets up with her children to see them off to school, and then returns to her bedroom. (A.R. 53.) She normally sleeps during the day or watches television. (A.R. 53.) She stated her medications make her tired and fatigued. (A.R. 60.) Plaintiff also said when she is more depressed, she spends more time in her room. (A.R. 65.) She estimated her episodes of depression last from a week to a month. (A.R. 65.)

/ / /

/ / /

/ / /

/ / /

/ / /

### B. Medical Evidence[1]

    a. *Troy Stiles, D.O.*

Plaintiff has seen Dr. Stiles as her primarily mental health therapist since October 2, 2014 for treatment of anxiety and depression. (A.R. 750-753.) When he first saw her, Plaintiff reported that her depression and anxiety were getting worse, and she thought her medications were not working as well as they previously had. (A.R. 750.) Dr. Stiles made a change in her medications. (A.R. 752053.) Six weeks later, on November 17, 2014, Plaintiff reported she was doing better. (A.R. 754.) She stated she no longer felt hopeless, was able to go outside the house more, and was able to accomplish things around her house. (A.R. 754.) She continued to report anxiety when she was in public, but was working with a therapist to deal with it. (A.R. 754.) She also complained of difficulty with concentration and focus. (A.R. 754.)

On November 25, 2014, Dr. Stiles completed a medical source statement. (A.R. 758.) Dr. Stiles opined that Plaintiff had moderate limitations in activities of daily living and social functioning, as well as deficiencies in concentration, persistence or pace. (A.R. 758.) He indicated Plaintiff was markedly impaired in

---

[1] The administrative record includes Plaintiff's medical records from several health care providers over a lengthy period of time. (A.R. 299-978.) The Court has summarized only those records that are relevant to the specific issues presented for review.

the ability to remember work-like procedures, remember and carry out detailed instructions, maintain regular attention and concentration for extended periods, maintain regular attendance, work in coordination and proximity with others, complete a normal workday without interruptions from psychologically based symptoms, accept instructions and respond appropriately to criticism, respond appropriately to changes in a work setting, travel in unfamiliar places, or set realistic goals and make plans independently of others.  (A.R. 758.)

On February 4, 2015, Plaintiff reported to Dr. Stiles that she was doing "alright."  (A.R. 954.)  She indicated she got a temporary job doing taxes, which she enjoyed, but she was overwhelmed with the number of hours she was working. She stated she worked over 55 hours the previous week.  (A.R. 954.)  She said she planned to quit if her hours were not reduced.  (A.R. 954.)  Dr. Stiles stated Plaintiff's medications seemed to be "helping her keep more even with good control of depression and anxiety."  (A.R. 956.)

In May 2015, Plaintiff told Dr. Stiles her mood was more stable.  (A.R. 958.) She reported having some periods of feeling more overwhelmed and slightly depressed, but they were a little less intense.  (A.R. 958.)  She also indicated she was no longer working since tax season was over.  (A.R. 958.)  In August 2015, Plaintiff reported "doing pretty well."  (A.R. 962.)  She was sleeping better, felt like her anxiety was less overall, and her depression was controlled for the most

part. (A.R. 962.) She said she felt like her current regimen was very helpful. She also reported getting a job at the Metra in concessions. (A.R. 962.) Dr. Stiles noted that Plaintiff was "stable." (A.R. 964.)

Dr. Stiles completed a second medical source statement on February 10, 2016. (A.R. 981-985.) Dr. Stiles stated Plaintiff has ongoing recurrent panic attacks, anxiety, sleep difficulties, is unable to cope with stress, and has episodes of depressed mood. (A.R. 981.) He opined her prognoses is "guarded" due to ongoing anxiety and depression. (A.R. 981.) Dr. Stiles stated Plaintiff has attention difficulties due to anxiety and depression. (A.R. 982.) He indicated she has moderate limitations with regard to activities of daily living, maintaining social functioning, and maintaining concentration, persistence or pace. (A.R. 984.) Dr. Stiles also estimated Plaintiff would likely miss three or more days of work per month. (A.R. 985.)

b.  *Jennifer A. Beckwith, M.D.*

Plaintiff established care with Dr. Beckwith on November 13, 2015. (A.R. 907.) Dr. Beckwith noted that Plaintiff has anxiety, depression, PTSD, diabetes, and osteoarthritis in her hips. (A.R. 907-908.) In December 2015, Plaintiff saw Dr. Beckwith for hip pain. (A.R. 916.) Plaintiff reported she was working at the Metra and standing for long periods of time. (A.R. 916.) Plaintiff indicated she only wanted to pursue conservative treatment. (A.R. 916.) She reported that

physical therapy and Meloxicam, which she took daily, helped take "the edge off."
(A.R. 916.)  Plaintiff also stated previous hip injections helped for about two
months.  (A.R. 916.)  Dr. Beckwith referred Plaintiff for another bilateral hip
injection, and refilled her Meloxicam.  (A.R. 917.)  She also recommended
Plaintiff look for a job where she doesn't have to be on her feet as much.  (A.R.
917.)

       c.    *Michelle Pittack, M.S.*

Plaintiff saw licensed clinical professional counselor, Michelle Pittack
starting in October 2014.  (A.R. 817-828.)  On February 3, 2015, Ms. Pittack noted
that Plaintiff was scheduled to work 50 hours a week, and the increased stress was
causing exhaustion, irritable mood, and emotional detachment.  (A.R. 928.)  Two
weeks later, Plaintiff indicated she cut her hours back at work.  (A.R. 930.)  In
January 2016, Ms. Pittack noted Plaintiff was again working part time as a tax
preparer.  (A.R. 950.)  Plaintiff reported that she was exhausted from working.
(A.R. 950.)  The following month, Plaintiff quit her job after working 105 hours in
a single pay period.  (A.R. 952.)  Plaintiff indicated that she quit because she was
feeling exhausted, overwhelmed, in pain, depressed and anxious from working so
many hours.  (A.R. 952.)

/ / /

/ / /

## C.     The ALJ's Findings

The ALJ followed the five-step sequential evaluation process in considering

Plaintiff's claim.  First, the ALJ found that Plaintiff had not engaged in substantial

gainful activity since her amended onset date of April 22, 2015.  (A.R. 21.)

Second, the ALJ found that Plaintiff has the following severe impairments:

"bilateral osteoarthritis of the hips; hernia; diabetes mellitus; idiopathic diabetes

mellitus retinopathy; obesity; right biceps tendinitis; right rotator cuff tear; major

depressive disorder; and posttraumatic stress disorder."  (*Id.*)  Third, the ALJ found

that Plaintiff does not have an impairment or combination of impairments that

meets or medically equals any one of the impairments in the Listing of

Impairments.  (A.R. 22-26.)  Fourth, the ALJ stated Plaintiff has the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.976(b)
> with some exceptions.  Specifically the claimant is able to lift, carry,
> push and pull 10 pounds frequently and 20 pounds occasionally, is
> able to stand and/or walk for two hours in an eight-hour workday, sit
> for six hours in an eight-hour workday, and must be able to alternate
> from a sitting position every 30 minutes, standing for five minutes
> before resuming a seated position while remaining on task.  The
> claimant is unable to reach overhead with the right dominant upper
> extremity, is never able to climb ladders, ropes, or scaffolds, is
> occasionally able to climb ramps and/or stairs, occasionally able to
> balance, stoop, kneel, crouch, and crawl, and must avoid all exposure
> to hazards, extreme cold, and vibrations.  The claimant is able to
> perform complex work tasks in a low stress environment (defined as
> no more than occasional changes in the workplace environment or job
> duties, no high production rate/pace work, no goal oriented or quota
> work unless the claimant is able to control pacing, and no requirement
> for overtime).

(A.R. 26.)

The ALJ next found that Plaintiff is unable to perform any of her past relevant work.  (A.R. 31-32.)  Finally, the ALJ found Plaintiff could perform other jobs that exist in significant numbers in the national economy in light of her age, education, work experience, and RFC.  (A.R. 32-33.)  Thus, the ALJ found that Plaintiff was not disabled.  (A.R. 33-34.)

## IV.    DISCUSSION

Plaintiff argues that the ALJ erred in the following ways: (1) improperly discrediting her testimony; (2) improperly discounting the opinions of her treating psychiatrist, Dr. Troy Stiles; and (3) failing to incorporate all of her impairments into the vocational consultant's hypothetical questioning.

### A.    The ALJ's Credibility Determination

Plaintiff argues that the ALJ's credibility determination was erroneous because the ALJ failed to provide specific, clear and convincing reasons for rejecting her testimony.  The Commissioner counters that the ALJ properly discounted Plaintiff's symptom testimony.

The credibility of a claimant's testimony is analyzed in two steps.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine whether the claimant has presented objective evidence of an impairment or impairments that could reasonably be expected to produce the pain or other

symptoms alleged.  *Id.*  Second, if the claimant meets the first step, and there is no

affirmative evidence of malingering, the ALJ may reject the claimant's testimony

only if he provides "specific, clear and convincing reasons" for doing so.  *Id.*  "In

order for the ALJ to find [the claimant's] testimony unreliable, the ALJ must make

'a credibility determination with findings sufficiently specific to permit the court to

conclude that the ALJ did not arbitrarily discredit claimant's testimony.'"  *Turner*

*v. Commissioner of Soc. Sec. Admin.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010).

"General findings are insufficient; rather, the ALJ must identify what testimony is

not credible and what evidence undermines the claimant's complaints."  *Reddick v.*

*Chater*, 157 F.3d at 722 (quoting *Lester*, 81 F.3d at 834)).

    To assess a claimant's credibility, the ALJ may consider (1) ordinary

credibility techniques, (2) unexplained or inadequately explained failure to seek or

follow treatment or to follow a prescribed course of treatment, and (3) the

claimant's daily activities.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996);

*Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989).  An ALJ may also take the

lack of objective medical evidence into consideration when assessing credibility.

*Baston v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

    Here, the first step of the credibility analysis is not at issue.  The ALJ

properly determined that Plaintiff's medically determinable impairments could

reasonably be expected to cause her symptoms, and there is no argument that

Plaintiff is malingering. Therefore, the ALJ was required to provide clear and convincing reasons for rejecting Plaintiff's testimony regarding her symptoms. The Court finds the ALJ did so.

The ALJ found Plaintiff's testimony regarding the degree of her limitations was only partially credible based on the medical evidence and her activities of daily living. (A.R. 29.) In reaching these conclusions, the ALJ properly identified specific aspects of Plaintiff's testimony she found not credible, and cited specific evidence she believed contradicted that testimony. (A.R. 29.) *Reddick*, 157 F.3d at 722; *Brown-Hunter*, 806 F.3d at 489.

For example, with respect to Plaintiff's report of hip pain, the ALJ pointed out that Plaintiff sought only conservative treatment and was not prescribed pain medications. (A.R. 29.) Evidence of conservative treatment may be "sufficient to discount a claimant's testimony regarding the severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). The ALJ also pointed out that Plaintiff's work at the Metra required standing for long periods of time. (A.R. 29.) The ALJ found this activity was inconsistent with her testimony that she is only able to stand for a few minutes at a time. (A.R. 29.)

The ALJ further pointed to Dr. Beckwith's treatment notes, which recommended Plaintiff pursue a job that would not require long periods of standing. (A.R. 29.) The ALJ found Dr. Beckwith's notes indicated she did not

believe Plaintiff's impairments were severe enough to preclude her from all work activity. (A.R. 29.) Moreover, Plaintiff's medical records showed she had worked a total of 105 hours in a single two-week period in early 2016. (T.R. 30.) While Plaintiff found this work schedule to be too strenuous and stressful, she continued to work with vocational rehabilitation to apply for other jobs in the Billings area with a less arduous work schedule. (T.R. 30.)[2]

Although this Court may not evaluate the evidence in the same way as the ALJ, the Court may not substitute its own interpretation of the evidence for the ALJ's interpretation. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Therefore, the Court finds that the ALJ's credibility finding is properly supported by specific, clear and convincing reasons.

/ / /

---

[2] The ALJ also found Plaintiff's testimony regarding the efficacy of the hip injections was inconsistent with the medical records. (A.R. 29.) On this point, however, it appears the ALJ misstates the record. According to the ALJ, Plaintiff testified the hip injections only helped "for about three days." (A.R. 27.) The ALJ stated her testimony was contrary to the medical records that showed she reported relief for approximately two months. (A.R. 29.) But Plaintiff actually testified that the injections last "for a couple weeks." (A.R. 55.) Accordingly, the ALJ's decision on this point is not supported by substantial evidence. Nevertheless, the error is harmless. The Ninth Circuit has recognized that "an ALJ's error [is] harmless where the ALJ provide[s] one or more invalid reasons for disbelieving a claimant's testimony, but also provide[s] valid reasons that [are] supported by the record." *Molina v. Astrue,* 674 F.3d 1104, 1115 (9th Cir. 2012). As discussed above, the ALJ provided other valid reasons for discounting Plaintiff's credibility concerning the severity and persistence of her limitations that are supported by the record.

## B.     Consideration of the Treating Physician's Opinions

Plaintiff contends that the ALJ erred in discounting the opinions of Dr. Stiles.  In response, the Commissioner argues Plaintiff fails to show any error with regard to Dr. Stiles.

In assessing a disability claim, an ALJ may rely on "opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995.)  The Commissioner applies a hierarchy of deference to these three types of opinions.  The opinion of a treating doctor is generally entitled to the greatest weight.  *Id.*  ("As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant."); *see also* 20 C.F.R. § 404.1527(c)(2).  "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician."  *Lester*, 81 F.3d at 830.

"The opinion of a treating physician is given deference because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.'"  *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)).  "However, the opinion of the treating physician is not necessarily conclusive as to

either the physical condition or the ultimate issue of disability." *Id*. *See also Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability.").

If the treating physician's opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques, or is inconsistent with other substantial evidence in the record, it is not entitled to controlling weight. *Orn v. Astrue*, 495 F.3d 625, 631-32 (9th Cir. 2007) (quoting Social Security Ruling 96-2p). In that event, the ALJ must consider the factors listed in 20 C.F.R. § 404.1527(c) to determine what weight to accord the opinion. *See* Social Security Ruling 96-2p (stating that a finding that a treating physician's opinion is not well supported or inconsistent with other substantial evidence in the record "means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527."). The factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) the specialization of the treating source; and (6) any other factors

brought to the ALJ's attention that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)(I)-(ii), (c)(3)-(6); *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).

Opinions of treating physicians may only be rejected under certain circumstances. *Lester,* 81 F.3d at 830. To discount an uncontradicted opinion of a treating physician, the ALJ must provide "clear and convincing reasons." *Id.* To discount the controverted opinion of a treating physician, the ALJ must provide "'specific and legitimate reasons' supported by substantial evidence in the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012)*; Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). The ALJ can accomplish this by setting forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors' are correct." *Reddick*, 157 F.3d at 725. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." *Lester*, 81 F.3d at 831. However, "the findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings." *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996).

In her decision, the ALJ gave the opinions in Dr. Stiles' first medical source statement of November 11, 2014 "minimal weight." The ALJ determined the opinions in Dr. Stiles' first statement were inconsistent with his treatment records and with Plaintiff's recent work history. (A.R. 28.) An ALJ may reject a treating physician's opinion on the basis that a conflict exists between the treating physician's opinion and the physician's notes. *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014). Here, the ALJ adequately explained how Dr. Stiles' November 25, 2014 opinion conflicted with his own treatment notes dated a week earlier.

Regarding Dr. Stiles' second medical source statement of February 10, 2016, the ALJ gave his opinions "partial weight." (A.R. 28, 31.) The ALJ agreed with Dr. Stiles' assessment of moderate limitations in activities of daily living and concentration, persistence and pace. (A.R. 30.) Therefore, the ALJ limited Plaintiff to low stress work in the RFC. (A.R. 31.) The ALJ did not, however, find his opinion regarding social functioning was supported. The ALJ pointed out that Plaintiff testified she does not have difficulties interacting with others, except for experiencing anxiety around large groups of people. (A.R. 30.) Therefore, the ALJ provided a sufficiently specific reason for partially discounting Dr. Stiles February 10, 2016 opinions. The ALJ's observations are supported in the record. (A.R. 754; 58.)

In evaluating the weight to accord to Dr. Stiles' opinions, the ALJ did not specifically reference 20 C.F.R. § 404.1527, or the factors to be considered therein. Nevertheless, a reference to each of the factors can be found at different parts of the ALJ's discussion.

The Court, therefore, finds that the ALJ did not err in assigning only partial weight to Dr. Stiles' opinion.

**C.     The ALJ's Failure to Incorporate Impairments into Hypothetical Questions Posed to the Vocational Expert.**

Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). "The testimony of a vocational expert 'is valuable only to the extent that it is supported by medical evidence.'" *Magallanes*, 881 F.2d 747, 756 (9th Cir. 189) (quoting *Sample*, 694 F.2d 639, 644 (9th Cir. 1982)). If the assumptions in the hypothetical are not supported by the record, then the vocational expert's opinion that the claimant has a residual working capacity has no evidentiary value. *Embrey*, 849 F.2d at 422

Plaintiff argues that the hypothetical the ALJ relied on to find there are jobs she can perform did not include all of her impairments. As discussed above, the Court has determined the ALJ adequately supported her reasons for discounting Plaintiff's testimony and the medical source evidence. Accordingly, the

hypotheticals the ALJ relied on properly accounted for all of Plaintiff's limitations that the ALJ found credible and supported by evidence in the record.

Therefore, the Court finds the ALJ's determination at step five is supported by substantial evidence.

V.     **CONCLUSION**

Based on the foregoing,  **IT IS ORDERED** that the Commissioner's decision denying Plaintiff's claim for disability insurance benefits is **AFFIRMED**, and Plaintiff's motion for summary judgment (Doc. 11) is **DENIED**.

**IT IS ORDERED**.

DATED this 25th day of February, 2018.

TIMOTHY J. CAVAN
United States Magistrate Judge